Filed 6/21/24  P. v. Welch CA2/7

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JEMAR DEWAYNE WELCH,<br><br>    Defendant and Appellant. | B328175<br><br>(Los Angeles County<br>Super. Ct. No. NA099773) |

APPEAL from a judgment of the Superior Court. Richard M. Goul, Judge.  Affirmed in part, reversed in part, and remanded with directions.

Stanley Dale Radtke, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven E. Mercer and Thomas C. Hsieh, Deputy Attorneys General, for Plaintiff and Respondent.

_____

This is Jemar Dewayne Welch's third appeal. In his first appeal, we affirmed his conviction of second degree murder but remanded to allow the trial court to exercise its sentencing discretion under Penal Code section 12022.53, subdivision (h),[1] to strike the firearm enhancement the court had imposed. On remand, Welch was represented by counsel at the resentencing hearing, but Welch was not present. The trial court again imposed the firearm enhancement, and Welch appealed.

In his second appeal, we found the trial court erred in resentencing Welch without him being present. We instructed the trial court to order a supplemental probation report and to hold a new resentencing hearing at which it would take into account all relevant factors, including Welch's postjudgment conduct, in exercising its discretion whether to strike or impose a lesser firearm enhancement. Following another resentencing hearing at which Welch was present (but without ordering a supplemental probation report), the trial court again imposed the firearm enhancement.

In this appeal, Welch argues the trial court erred in failing to strike the firearm enhancement or impose a lesser enhancement. In supplemental briefing, Welch argues that under Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Assembly Bill 333), the elements for the gang enhancement have not been met, and further, the failure to bifurcate trial of the gang enhancement requires reversal of the murder conviction and gang enhancement. We conclude the trial court did not abuse its discretion in imposing the original firearm enhancement. However, we agree with Welch that the true finding on the gang

---

[1]     Further statutory references are to the Penal Code.

2

enhancement allegation must be reversed.  As to bifurcation of the trial of the gang enhancement, the Supreme Court recently held in *People v. Burgos* (June 3, 2024, S274743) __ Cal.5th ___ [2024 Cal. Lexis 3060] that the requirement in section 1109 that the gang enhancement be separately tried is not retroactive.

We reverse the true finding on the gang enhancement allegation and remand to allow the People an opportunity to retry the gang enhancement.  If the People elect not to retry the gang enhancement, the current sentence will remain in place, as well as the abstract of judgment, because the court never imposed a sentence on the enhancement.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Welch's Conviction of Second Degree Murder and His Appeal*

According to the testimony at trial, Welch and Alexander Johnson were members of rival gangs:  Welch was a member of the Insane Crips, and Johnson was a member of the Rollin' 20s. The two had previously encountered each other.  In the first incident, Johnson overheard a conversation between Welch and Ronnisha Garcia in which Welch told Garcia, "Don't let me find out you hanging out with these bum niggas."  Johnson later confronted Welch, saying, "Rollin' Crip.  Who you calling a bum-ass nigga?"  Welch responded "What the fuck?" and identified himself as "Baby Insane."  In the second incident, Johnson approached Welch at a government building and said, "20 Crips." Welch laughed at him.  (*People v. Welch* (Oct. 9, 2018, B281532) [nonpub. opn.] (*Welch I*).)

3

On the afternoon of the shooting, Johnson was standing on the sidewalk with four other individuals. Welch drove up and dropped off his friend, a fellow member of the Insane Crips. Johnson left his group to go home at the same time that Welch began to back up his car. Welch hit Johnson with the rear of his car. Johnson tapped Welch's car with his hand, walked around to the driver's side, told Welch to get out of the car, and said he needed a "fade," meaning a fight. Johnson walked to the middle of the street and waited for Welch to get out of the car. According to witnesses to the shooting, Johnson did not reach for a gun.[2] Welch jumped out of the car, reached for a gun, and shot Johnson twice, killing him. (*Welch I, supra*, B281532.)[3]

The jury convicted Welch of second degree murder (§ 187, subd. (a)) and found true the special allegations that the murder was committed for the benefit of a criminal street gang (§ 186.22, subd. (b)(1)(C)) and Welch personally used and personally and intentionally discharged a firearm causing death (§ 12022.53, subds. (b), (c), & (d)). (*Welch I, supra*, B281532.) The trial court

---

[2] Welch testified that he saw Johnson reach into his backpack and start to pull out a gun, and Welch shot Johnson in self-defense.

[3] We grant the People's request to take judicial notice of the record in *Welch I, supra*, B281532. (Evid. Code, §§ 452, subd. (d), 459.) We deny Welch's request for judicial notice of our prior opinions in Welch's first two appeals because his request is made in a footnote to his supplemental brief and not in a separate motion. (See Cal. Rules of Court, rule 8.252(a) ["To obtain judicial notice by a reviewing court . . . a party must serve and file a separate motion with a proposed order"].) However, we consider the prior appeals for purposes of explaining the background of this appeal.

sentenced Welch to 15 years to life in prison for the murder, plus a consecutive term of 25 years to life for use of the firearm pursuant to section 12022.53, subdivision (d).  The court orally stayed the gang enhancement.[4]  (*Ibid.*)

In Welch's first appeal, we affirmed his conviction but remanded for resentencing, concluding Senate Bill No. 620 (2017-2018 Reg. Sess.), which gave the trial court new discretion to strike a firearm enhancement under section 12022.53, subdivision (h), applied retroactively.[5]  (*Welch I*, *supra*, B281532.)

B.    *The Trial Court's First Resentencing Hearing*

The trial court held a resentencing hearing on September 21, 2020.  Welch's appointed attorney was present, but Welch was not.  At the outset of the hearing, the court inquired of Welch's attorney, "[W]e are here for the *Franklin* setting[6] and sentencing on the weapon.  And what would you

---

[4]    At sentencing, the trial court asked the prosecutor if the gang enhancement should be imposed, and the prosecutor responded that the enhancement "has no effect."  The abstract of judgment does not reflect imposition (or a stay) of the gang enhancement.

[5]    Judge Richard Romero presided over the trial and sentenced Welch.  Because Judge Romero was no longer serving as a Los Angeles Superior Court judge at the time we remanded in *Welch I* for resentencing, Judge Richard M. Goul presided over the resentencing hearings.

[6]    In *People v. Franklin* (2016) 63 Cal.4th 261, 284 (*Franklin*) the Supreme Court held a youth offender must have a "sufficient opportunity to make a record of information relevant to his eventual youth offender parole hearing."  At this parole hearing,

like to do?" Welch's attorney responded, "Well, the sentencing on the weapon, we can do that kind of whenever you want to do that. [¶]. . .[¶] It doesn't matter to me when we do it."

After a brief discussion about scheduling of the *Franklin* hearing (and no argument about the firearm enhancement), the trial court explained as to resentencing, "First off, as far as the remittitur on the sentencing, the court, having reviewed the file and transcripts that were available, does exercise its discretion in imposing the weapons enhancement as imposed at the time of sentencing. That resolves that issue as far as the court's remittitur." The prosecutor then inquired, "so to be clear, the gun allegation remains?" The court confirmed, "Yes. The allegation remains. The court exercises its discretion in imposing it, yes."

Welch appealed, and we again reversed. We concluded Welch had a constitutional and statutory right to be present at the resentencing hearing and the error was prejudicial. We further concluded the trial court failed to consider Welch's postjudgment conduct and that "[a]bsent information about Welch's conduct in prison, we cannot tell whether this conduct and any other information Welch could have presented would have swayed the trial court to strike the firearm enhancement." (*People v. Welch* (Aug. 16, 2021, B309147) [nonpub. opn.] (*Welch II*).) We remanded the matter to the trial court for Welch to attend the resentencing hearing, and we instructed the trial

_____

the Parole Board "shall give great weight to the diminished culpability of youth as compared to adults, the hallmark features of youth, and any subsequent growth and increased maturity of the prisoner in accordance with relevant case law." (§ 4801, subd. (c).)

6

court to order a supplemental probation report so that it could consider all relevant sentencing factors, including postjudgment conduct, before determining whether to strike the firearm enhancement or impose a lesser enhancement.

C.  *The Trial Court's Second Resentencing Hearing*

On January 12, 2023 the trial court held a second resentencing hearing.  Welch, who was present at the hearing, submitted a sentencing memorandum asking the trial court to strike (not reduce) his firearm enhancement.  Welch argued in his brief that the crime had been committed during his youth (when he was 21 years old),[7] and he "has been a model prisoner, during the pendency of his trial, and since he left this courthouse and began serving his time."  Welch pointed out that his security level placement score dropped from an initial classification score of 72 to its current level of 19,[8] and he attached copies of numerous commendations, work supervisor reports, certificates

---

[7]    Welch's sentencing memorandum incorrectly stated he was 19 years old at the time of the crime, but he was born in early July 1993, and he committed the offense in late July 2014.

[8]    "The classification of felon inmates shall include the classification score system as established.  A lower placement score indicates lesser security control needs and a higher placement score indicates greater security control needs."  (Cal. Code Regs., tit. 15, § 3375, subd. (d)); see Cal. Code Regs., tit. 15, § 3375.1, subd. (a) ["Except as provided in section 3375.2, each inmate shall be assigned to a facility with a security level which corresponds to the following placement score ranges:  (1)  An inmate with a placement score of 0 through 18 shall be placed in a Level I facility.  (2)  An inmate with a placement score of 19 through 27 shall be placed in a Level II facility . . ."].)

of completion, special recognition awards, and school transcripts from Cuesta College showing that he took two classes in the Fall of 2019 and two classes in the Summer of 2020. Welch argued this evidence showed "a pattern of hard work, adherence to rules, a desire to rehabilitate oneself, [and] an ongoing education that allow a productive life after parole."

Welch also submitted two *Franklin* mitigation reports. The first report was prepared by Pfifer Investigations and Sentencing Services. The report provided a summary of the crime and included background information on Welch's childhood. Welch "had little contact" with his biological father while growing up, and his mother, who had five children with five different fathers, was absent and uninvolved in his upbringing. Further, there were "extended periods of time when [Welch] and his siblings had to live with other people because their mom was in jail or had been evicted due to the rent not being paid." In addition, Welch's family relied on public assistance, they lived in subsidized low-income housing, and some of Welch's relatives sold drugs. Gang-related incidents became a "daily occurrence" in the Long Beach area where Welch grew up, and his brother had been shot twice, once in a gang-related incident and another during a routine police traffic stop. The report also pointed out that Welch previously had been singled out by the police, and, at the time of the incident, Welch was living with his sister and trying to obtain financial aid to attend a local community college. Finally, the report explained that Welch believed that he shot Johnson in self-defense.

The second *Franklin* mitigation report was prepared by Dr. Carl E. Osborn, a forensic psychologist. The report set forth Welch's background, including how he fell into gang life. The

report provided details of the crime, including how Welch viewed "his actions during his committing offense as the result of legitimate self-defense." The report explained that neuroscience has shown there is incomplete brain maturation until at least the age of 25, and at Welch's current age of 29, he "is now psychologically mature, and his behavioral record reflects what would currently be expected of an inmate whose antisocial behavior is limited to adolescence." Further, Welch "does stand a good chance of yet becoming a productive, contributing citizen by the time he is considered for parole."

At the hearing, the trial court indicated it had "read the extensive motion filed by the defense counsel as well as the attachments which include not only the Department of Corrections record but the youth offender parole records as well." The court acknowledged it was required to consider Welch's post-sentencing conduct, and the court stated it was "satisfied that [Welch's counsel] has presented evidence of postconviction conduct which would potentially be a mitigating factor." Nevertheless, the trial court declined to strike the firearm enhancement or to impose a lesser enhancement, explaining that in "considering the other factors which the original court was allowed to consider in sentencing the defendant," the offense "involved great violence, great bodily harm, threat of great bodily harm or other acts disclosing a high degree of cruelty, viciousness, or callousness." In addition, Welch "was armed with or used a weapon [and] the victim . . . was vulnerable in that he was alone, unarmed, unaware." Welch again appealed.

**DISCUSSION**

A. *The Trial Court Did Not Abuse Its Discretion in Declining To Strike the Firearm Enhancement or Impose a Lesser Firearm Enhancement*

Welch contends the trial court erred in failing to order a supplemental probation report and abused its discretion in imposing the original firearm enhancement under section 12022.53, subdivision (d). We review the court's sentencing decision in declining to strike the firearm enhancement or impose a lesser enhancement for an abuse of discretion. (*People v. Flores* (2021) 63 Cal.App.5th 368, 376 ["We review the denial of a motion to dismiss an enhancement for abuse of discretion."]; *People v. Pearson* (2019) 38 Cal.App.5th 112, 116 (*Pearson*) [same]; see *People v. Carmony* (2004) 33 Cal.4th 367, 377 ["a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it"].) The trial court's error in refusing to order a supplemental probation report was harmless, and the court did not abuse its discretion in sentencing Welch.

1. *The failure to order a supplemental probation report was harmless error*

Generally, "[w]hen an appellate court's reversal is accompanied by directions requiring specific proceedings on remand, those directions are binding on the trial court and must be followed. Any material variance from the directions is unauthorized and void." (*Butler v. Superior Court* (2002) 104 Cal.App.4th 979, 982; accord, *In re Candace P.* (1994) 24 Cal.App.4th 1128, 1131 ["The correct analysis, we believe, is

10

the determination whether an apparent variance in the trial court's execution of the appellate ruling is 'material.'"].)

In *Welch II*, we instructed the trial court to "order a supplemental probation report and consider relevant sentencing factors, including postjudgment circumstances" before deciding whether to strike the firearm enhancement or impose a lesser enhancement. (*Welch II*, *supra*, B309147.) It is undisputed that the trial court failed to comply with our instruction to order a supplemental probation report. However, the error was not prejudicial.

As an initial matter, Welch forfeited his challenge to the trial court resentencing him without first obtaining a supplemental probation report by his failure to object at the January 12, 2023 hearing. (*People v. Scott* (1994) 9 Cal.4th 331, 352, fn. 15 ["[t]he trial court's failure to secure a current probation report is waived on appeal by the failure to object"]; *People v. Johnson* (1999) 70 Cal.App.4th 1429, 1433 ["defendant has waived his right to object to the absence of a supplemental report by failing to do so in the trial court"].)[9]

Even if Welch had not forfeited the issue, the trial court's failure to obtain and review a supplemental probation report was harmless under *People v. Watson* (1956) 46 Cal.2d 818, 834-836).

_____

[9]     In 1996 the Legislature enacted section 1203, subdivision (b)(4), which provides that for defendants eligible for probation, the requirement of a probation report cannot be waived without a written stipulation of counsel or oral waiver in open court, with the court's consent. That section does not apply here because Welch was not eligible for probation. (See *People v. Johnson*, *supra*, 70 Cal.App.4th at pp. 1431-1432.)

(See *People v. Dobbins* (2005) 127 Cal.App.4th 176, 182 ["We perceive no federal constitutional right to a supplemental probation report. Because the alleged error implicates only California statutory law, review is governed by the *Watson* harmless error standard."].) Under *Watson*, a "defendant must show it is reasonably probable a more favorable result would have been obtained absent the error. . . . Prejudice under *Watson* 'must necessarily be based upon reasonable probabilities rather than upon mere possibilities.'" (*People v. Mena* (2012) 54 Cal.4th 146, 162.)

Welch does not identify any prejudice that resulted from the trial court's failure to order a supplemental probation report. The purpose of the supplemental probation report is to provide the trial court with information necessary for its exercise of discretion. (*People v. Tatlis* (1991) 230 Cal.App.3d 1266, 1273 ["The report presents information in a cohesive fashion, facilitating the task of weighing newly revealed mitigating factors in the balance."].) All of the information that would have been included in the supplemental probation report was provided by Welch in his sentencing memorandum and the two *Franklin* mitigation reports that Welch submitted to the trial court before the resentencing hearing. Welch has not shown that a supplemental probation report would have included any additional information relevant to the trial court's sentencing decision. And, as discussed, after considering the information submitted by Welch, the court found Welch's postconviction conduct was a mitigating factor. (Cf. *People v. Yanaga* (2020) 58 Cal.App.5th 619, 628 [reversing trial court order on remand for resentencing declining to strike firearm enhancement where court did not consider postconviction conduct].)

12

2. *The trial court properly considered the relevant factors in determining whether to strike the firearm enhancement*

Under section 12022.53, subdivision (h), the trial "court may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section.  The authority provided by this subdivision applies to any resentencing that may occur pursuant to any other law." (See *Pearson*, *supra*, 38 Cal.App.5th at p. 116 ["Senate Bill No. 620 . . . which added section 12022.53, subdivision (h), gave the trial court discretion . . . '[to] strike or dismiss an enhancement otherwise required to be imposed by this section'"].)  If the trial court determines that a section 12022.53, subdivision (d), enhancement should be struck or dismissed under section 12022.53, subdivision (h), the court may impose a lesser statutory enhancement.  (See *People v. Tirado* (2022) 12 Cal.5th 688, 692, 700; *People v. Morrison* (2019) 34 Cal.App.5th 217, 222.)

The factors a trial court must consider in determining whether to strike a firearm enhancement in the interest of justice "are the same factors the trial court must consider when handing down a sentence in the first instance."  (*Pearson*, *supra*, 38 Cal.App.5th at p. 117, citing Cal. Rules of Court, rules 4.410, 4.421, & 4.423.)  These factors include whether "'[t]he crime involved great violence, . . . threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness'" and whether "'[t]he defendant has engaged in violent conduct that indicates a serious danger to society.'"  (*Pearson*, at p. 117; see *People v. Stanley* (1984) 161 Cal.App.3d 144, 150 ["The scope of information a sentencing court may

13

consider is very broad, and includes the circumstances surrounding the crime and facts relating to the defendant which are not directly connected to commission of the crime for which he is being sentenced."].)

The trial court may also consider a defendant's postconviction conduct while in prison. (*People v. Yanaga, supra,* 58 Cal.App.5th at p. 627; see *Dix v. Superior Court* (1991) 53 Cal.3d 442, 460 ["[I]t is well settled that when a case is remanded for resentencing after an appeal, the defendant is entitled to 'all the normal rights and procedures available at his original sentencing' . . . including consideration of any pertinent circumstances which have arisen since the prior sentence was imposed."].) "[U]nless the record affirmatively reflects otherwise," the trial court is "deemed to have" considered all of the enumerated factors. (Cal. Rules of Court, rule 4.409.)

Welch contends the trial court did not understand that it could exercise its discretion to impose a lesser firearm enhancement. However, the prosecutor advised the court at the resentencing hearing that "the court does have the option to replace the 12022.53, [subdivision] (d) with a [subdivision] (c) or a [subdivision] (b) [enhancement] . . . if [it] thinks that appropriate." Although the court did not specifically address the lesser firearm enhancements, we presume it was aware of its discretion to impose a lesser enhancement, especially in light of the prosecutor's acknowledgment.[10] (*People v. Morrison, supra,*

---

[10]    In *People v. McDavid* (April 29, 2024, S275940) 15 Cal.5th 1015, 1021, the Supreme Court held that a trial court may impose a lesser included uncharged enhancement outside of section 12022.53 (for example, section 12022.5). This holding

34 Cal.App.5th at p. 225 [concluding trial court may impose lesser section 12022.53 enhancement, and therefore, "after the publication of our decision today, the usual presumption that a sentencing court correctly applied the law will apply and will ordinarily prevent remand where the record is silent as to the scope of a court's discretion"]; see *People v. Henson* (1991) 231 Cal.App.3d 172, 182 ["the lower court's mere silence as to whether or not it was engaging in an exercise of discretion is insufficient to sustain appellant's burden of proof"].)

Welch also argues the trial court improperly relied on factors that are present in every murder, including great violence and bodily harm, being armed with a weapon, and that the crime posed a risk to the general public. Rather, he asserts, something more than the ordinary factors present in every murder is required in order to find an aggravating factor, citing *People v. Moreno* (1982) 128 Cal.App.3d 103, 110 ["The essence of 'aggravation' relates to the effect of a particular fact in making

---

does not impact our decision because, as Welch acknowledges, the "record reflects that the sentencing court . . . would not have exercised discretion" to impose any lesser uncharged enhancement. (See *People v. Belmontes* (1983) 34 Cal.3d 335, 348, fn. 8 [stating with respect to sentencing under section 1170.1, "[t]he petition may also be summarily denied if the record reflects that the sentencing court clearly indicated that it would not have exercised discretion to sentence . . . even if it had been aware that it had such discretion"]; see also *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 530, fn. 13.) We assume that if the trial court declined to impose a 10- or 20-year firearm enhancement under section 12022.53, subdivision (b) or (c), it would not have exercised its discretion to impose a three-, four-, or 10-year enhancement under section 12022.5, subdivision (a).

the offense distinctively worse than the ordinary."]; see *People v. Scott, supra*, 9 Cal.4th at p. 350 ["the court generally cannot use a single fact both to aggravate the base term and to impose an enhancement, nor may it use a fact constituting an element of the offense either to aggravate or to enhance a sentence"]; Cal. Rules of Court, rule 4.420(h) ["A fact that is an element of the crime on which punishment is being imposed may not be used to impose a particular term."].  But in imposing the firearm enhancement, the trial court considered factors that were not present in murder cases generally, including the use of a weapon to commit the murder, great violence, the vulnerability of the unarmed victim, and risk to the public, which are not elements of the crime.[11] (See § 189, subd. (a) [use of a weapon is not an element of first degree murder]; *People v. Dixie* (1979) 98 Cal.App.3d 852, 856 ["Violence is not an element of murder."].)  Specifically, the trial court found the "crime involved great violence"; Welch "was armed with or used a weapon"; "the victim . . . was vulnerable in that he was alone, unarmed, [and] unaware"; and "the shooting was done . . . upon a street in a residential area [and] posed a risk to the general public."

These are all proper factors for the trial court to have considered (Cal. Rules of Court, rules 4.420 & 4.421), and Welch has not shown the court's decision to impose the firearm enhancement was either arbitrary or capricious.  (*Pearson*, *supra*, 38 Cal.App.5th at p. 116 [absent a showing that the trial court's

---

[11]    Welch also questions whether the trial court considered his youth and immaturity.  However, we assume the court, in acknowledging it had reviewed the two *Franklin* mitigation reports submitted by Welch's counsel, took Welch's youth into account in making its sentencing decision.

""""sentencing decision was irrational or arbitrary,""""" we presume the trial court """"acted to achieve legitimate sentencing objectives"""""]; see *People v. Carmony, supra,* 33 Cal.4th at p. 379 ["the Court of Appeal in this case . . . did not conclude that the trial court relied on improper factors in refusing to strike. Rather, it simply disagreed with the court's weighing of these factors.  And in doing so, it erred"].)[12]

B.      *The True Finding on the Gang Enhancement Must Be Reversed in Light of Assembly Bill 333*

In his supplemental brief Welch argues that Assembly Bill 333 applies retroactively and requires reversal of both his murder conviction and the gang enhancement.  We agree as to the gang enhancement, but not the murder conviction.

---

[12]      Welch argues in his reply brief that the trial court abused its discretion in not considering the Racial Justice Act (§ 745). Welch forfeited this issue by failing to raise it in the trial court or in his opening brief.  Therefore, we do not consider it.  (*People v. Adams* (1990) 216 Cal.App.3d 1431, 1441, fn. 2, italics omitted ["'points raised in the reply brief for the first time will not be considered, unless good reason is shown for failure to present them before'"].)  Further, any claim that the sentence violates the Racial Justice Act may be raised postjudgment by way of a petition for writ of habeas corpus.  (§ 1473, subd. (e) ["Notwithstanding any other law, a writ of habeas corpus may also be prosecuted after judgment has been entered based on evidence that a criminal conviction or sentence was sought, obtained, or imposed in violation of subdivision (a) of Section 745"].)

1.    *Assembly Bill 333*

Effective January 1, 2022, Assembly Bill 333 "impose[d] new substantive and procedural requirements for gang allegations." (*People v. Sek* (2022) 74 Cal.App.5th 657, 665 (*Sek*).) "Assembly Bill 333 made the following changes to the law on gang enhancements:  First, it narrowed the definition of a 'criminal street gang' to require that any gang be an 'ongoing, *organized* association or group of three or more persons.' [Citation.]  Second, whereas section 186.22, former subdivision (f) required only that a gang's members 'individually or collectively engage in' a pattern of criminal activity in order to constitute a 'criminal street gang,' Assembly Bill 333 requires that any such pattern have been '*collectively* engage[d] in' by members of the gang.  [Citation.]  Third, Assembly Bill 333 also narrowed the definition of a 'pattern of criminal activity' by requiring that (1) the last offense used to show a pattern of criminal gang activity occurred within three years of the date that the currently charged offense is alleged to have been committed; (2) the offenses were committed by two or more gang 'members,' as opposed to just 'persons'; (3) the offenses commonly benefitted a criminal street gang; and (4) the offenses establishing a pattern of gang activity must be ones other than the currently charged offense. [Citation.] Fourth, Assembly Bill 333 narrowed what it means for an offense to have commonly benefitted a street gang, requiring that any 'common benefit' be 'more than reputational.'" (*People v. Tran* (2022) 13 Cal.5th 1169, 1206 (*Tran*); see *Sek*, at p. 665.)

18

2.   *Welch is entitled to the ameliorative benefits*
     *of Assembly Bill 333*

Assembly Bill 333 became effective following our remand in *Welch II*.  Welch contends that because his judgment was not yet final when the amendments to section 186.22 became effective, he is entitled to the ameliorative benefits of Assembly Bill 333, including reversal of the gang enhancement, and, assuming trial of the gang enhancement should have been bifurcated, reversal of the murder conviction.  The People respond that Welch's murder conviction and gang enhancement finding became final when the remittitur in *Welch I* was issued on January 29, 2019 because we remanded for the limited purpose of resentencing, and thus, the ameliorative benefits of Assembly Bill 333 do not apply.  Welch has the better argument.

In *In re Estrada* (1965) 63 Cal.2d 740, the Supreme Court held that statutory amendments that reduce the punishment for an offense apply retroactively to a defendant whose judgment is not yet final, absent a contrary legislative intent.  (*Id.* at p. 745; see *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299 [discussing *Estrada* and its progeny].)  Assembly Bill 333's changes to the elements necessary to prove a section 186.22 gang enhancement apply retroactively under *Estrada*.  (*Tran, supra,* 13 Cal.5th at pp. 1206-1207; *People v. E.H.* (2022) 75 Cal.App.5th 467, 478 ["Assembly Bill 333's substantive changes apply retroactively to all cases . . . in which the judgment of conviction is not yet final because the changes 'redefine, to the benefit of defendants, conduct subject to criminal sanctions'"].)

The Courts of Appeal are divided as to whether Assembly Bill 333 retroactively applies when a case is remanded on a limited issue not involving a gang enhancement.  In *People v.*

*Lopez* (2023) 93 Cal.App.5th 1110 (*Lopez*), review granted Nov. 15, 2023, S281488,[13] Division Two of the Fourth District concluded that after the Court of Appeal affirmed the convictions but remanded for the trial court to consider whether to strike the defendant's prior serious felony conviction and firearm enhancements, on remand the trial court lacked jurisdiction to consider application of Assembly Bill 333 because the defendant's convictions were final and the remand was only for resentencing. (*Id.* at p. 1119.)

By contrast, the Fifth District in *People v. Mitchell* (2023) 97 Cal.App.5th 1127 (*Mitchell*), review granted Feb. 21, 2024, S283474, disagreed with *Lopez* and concluded that because the defendant had not been resentenced when Assembly Bill 333 took effect, the defendant's "criminal judgment never became final, . . . [and the court] must presume the Legislature intended for this ameliorative enactment to apply as broadly as is constitutionally permissible." (*Id.* at p. 1140.) Thus, the court concluded, "we reject [the People's] assertion that the issue of [defendant's] guilt is final even though the validity of appellant's sentence is still being adjudicated." (*Id.* at pp. 1140-1141.)

We agree with *Mitchell* that "[t]he cutoff point for application of ameliorative amendments is the date when the entire case or prosecution is reduced to a final judgment."

_____

[13]     The Supreme Court in *Lopez*, review granted November 15, 2023, S281488, will decide the following question: "Is defendant entitled to retroactive application of Assembly Bill No. 333 (2021-2022 Reg. Sess.) where he appeals for a second time after his judgment was conditionally reversed and the Court of Appeal issued a limited remand to the trial court to address sentencing issues?"

(*Mitchell*, *supra*, 97 Cal.App.5th at p. 1139, review granted; see *Tran, supra,* 13 Cal.5th at pp. 1206-1207 ["*Estrada* 'stand[s] for the proposition that (i) in the absence of a contrary indication of legislative intent, (ii) legislation that ameliorates punishment (iii) applies to all cases that are not yet final as of the legislation's effective date.'"].)

Moreover, we disagree with the People's contention that under *People v. Padilla* (2022) 13 Cal.5th 152, a criminal judgment can be bifurcated such that a portion of the judgment may be deemed final while other portions of the judgment are considered non-final. In *Padilla*, the Supreme Court considered the retroactive effect of Proposition 57, the Public Safety and Rehabilitation Act of 2016 (Cal. Const., art. I, § 32), which reformed the process by which criminal cases may be filed against juveniles in criminal courts. In holding that Proposition 57 applied retroactively to a sentence vacated by a habeas corpus proceeding, the Supreme Court observed in the final paragraph of the opinion, as pointed out by the People here, that "the right and remedy we recognize today does not allow [the petitioner] to raise claims unrelated to his sentence," and therefore, "[w]hatever potential [the transfer hearing provided under Proposition 57] may have for reducing [the petitioner's] punishment (the nonfinal part of his judgment), it does not authorize or constitute relitigation of guilt." (*Padilla*, at p. 170.) As the Court of Appeal explained in *People v. Trent* (2023) 96 Cal.App.5th 33, 43, review granted Dec. 20, 2023, S282644, however, "the final paragraph of *Padilla* was intended to allay concerns that the defendant in that case would request a new adjudication of his guilt in the juvenile court itself and was not intended to divorce the court's retroactivity analysis from

21

instances in which the retroactive relief would result in a more favorable sentence because the underlying change required reversal of a count of conviction for possible retrial." (See *Mitchell*, *supra*, 97 Cal.App.5th at p. 1140, review granted ["We do not read *Padilla* as creating bifurcated judgments in the manner respondent now advocates—especially for a criminal matter, such as this one, that never had its sentence reduced to a final judgment."].)

Accordingly, Welch was entitled to the ameliorative benefits of Assembly Bill 333 because his case had not yet been reduced to a final judgment. (See *People v. Salgado* (2022) 82 Cal.App.5th 376, 380 ["The Attorney General, however, argues Assembly Bill 333 does not apply in this case because Salgado's conviction and enhancements findings were final long before the enactment of Assembly Bill 333. We are not persuaded. [¶] The California Supreme Court has recently held that 'once a court has determined that a defendant is entitled to resentencing, the result is vacatur of the original sentence, whereupon the trial court may impose any appropriate sentence.' [Citation.] Accordingly, when Salgado was resentenced under former section 1170, subdivision (d), his criminal judgment was 'no longer final'"].)

> 3. *Assembly Bill 333 requires reversal of the gang enhancement finding*

Welch argues, the People concede, and we agree the evidence at trial failed to establish that the alleged predicate offenses provided more than a reputational common benefit to the gang, as required under amended section 186.22, subdivision (e)(1). At trial, the People's gang expert testified that

22

"[w]hen you're a gang member, you need to make sure your gang has a reputation of using violence. When you have that reputation, it is easier to control the streets. It is easier to distribute narcotics. It is easier to get away with other crimes because you're not only intimidating other gang members but intimidating law abiding members of the community who may not step forward because they know your reputation, or they may step forward and then change their story because they're so scared because of your reputation." This evidence is insufficient to establish a gang enhancement under section 186.22, subdivision (e)(1).

Because "the retroactive application of the amendment impermissibly deprives defendant of [his] constitutional right to a jury trial on an element of the charged offense," we reverse the true finding on the gang enhancement. (*People v. Ramos* (2016) 244 Cal.App.4th 99, 104; see *People v. Figueroa* (1993) 20 Cal.App.4th 65, 71 ["Appellant is entitled to have the jury decide every essential element of the crime and enhancement charged against him, no matter how compelling the evidence may be against him."].)

> 4. *The People must have an opportunity to retry the gang enhancement against Welch*

"When a statutory amendment adds an additional element to an offense, the prosecution must be afforded the opportunity to establish the additional element upon remand." (*People v. Eagle* (2016) 246 Cal.App.4th 275, 280.) Accordingly, the proper remedy is to remand to give the People an opportunity to retry the gang enhancements under current law. (*Mitchell*, *supra*, 97 Cal.App.5th at p. 1131, review granted ["[T]he People shall

have an opportunity to retry the gang charge and the gang enhancement allegations under the new law."]; *People v. E.H.*, *supra*, 75 Cal.App.5th at p. 480 ["The proper remedy for this type of failure of proof—where newly required elements were 'never tried' to the jury—is to remand and give the People an opportunity to retry the affected charges."]; *People v. Sek*, *supra*, 74 Cal.App.5th at p. 669 ["Our decision does not bar the prosecution from retrying Sek on the gang enhancements upon remand."].)

5.      *The failure to bifurcate does not require reversal of Welch's murder conviction*

Assembly Bill 333 also added section 1109, which requires that the trial of a gang enhancement charged under section 186.22, subdivision (b), be bifurcated from and follow trial of the underlying offenses when requested by the defendant. (§ 1109, subd. (a) ["If requested by the defense, a case in which a gang enhancement is charged under subdivision (b) or (d) of Section 186.22 shall be tried in separate phases."]; *People v. Ramos* (2022) 77 Cal.App.5th 1116, 1129 ["Pursuant to section 1109, subdivision (a), upon a defendant's request, a case in which a gang enhancement is charged under section 186.22, subdivision (b) or (d) must be tried in separate phases."].)

Welch contends section 1109 is retroactive and the failure to bifurcate the gang enhancement constitutes structural error requiring reversal of his murder conviction. Although at the time of briefing the Courts of Appeal were divided on this question, the Supreme Court has now held in *People v. Burgos, supra*, __ Cal.5th ___ [2024 Cal. Lexis 3060] that section 1109 is not retroactive. The court reasoned there was no indication in the

24

legislative history that the Legislature "considered the issue of retroactivity at all," instead focusing on the narrowing of the gang enhancement statute.  (*Id*. at pp. 20-21.)  The court concluded the statute was therefore not retroactive under *In re Estrada*, *supra*, 63 Cal.2d 740, explaining, "[S]ection 1109 does not directly or potentially reduce the punishment for an offense.  Nor does it change the elements of a substantive offense, defense, or penalty enhancement.  Likewise, it does not create an alternative avenue for certain individuals to receive lesser or no punishment.  Instead, section 1109 reflects a prophylactic procedural rule that modifies the sequence of trial proceedings." (*Burgos*, at p. 23*.*)  Accordingly, "in the face of the Legislature's silence regarding Assembly Bill 333's application, we conclude that *Estrada's* inference of retroactivity applies to the punishment-mitigating changes to section 186.22, but not provisions governing the conduct of trial in section 1109."  (*Id*. at p. 36.)

## DISPOSITION

The gang enhancement is reversed, and the matter is remanded with directions to allow the People an opportunity to retry the gang enhancement under section 186.22.  If the People elect not to retry Welch on the gang enhancement, the trial court shall reinstate the sentence (without the gang enhancement).  In all other respects, the judgment is affirmed.


FEUER, J.

We concur:



MARTINEZ, P. J.



SEGAL, J.